FRED NORTON (CA SBN 224725)
fnorton@nortonlaw.com
BREE HANN (CA SBN 215695)
bhann@nortonlaw.com
NATHAN WALKER (CA SBN 206128)
nwalker@nortonlaw.com
THE NORTON LAW FIRM PC
299 Third Street, Suite 106
Oakland, CA 94607
Telephone: (510) 906-4907

Attorneys for Plaintiffs
ORACLE AMERICA, INC. and
ORACLE INTERNATIONAL CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC., a Delaware corporation and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>　　　　Plaintiffs,<br>　　v.<br><br>NEC CORPORATION OF AMERICA, a Nevada corporation,<br><br>　　　　Defendant. | Case No. _____<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**<br><br>DEMAND FOR JURY TRIAL |

COMPLAINT

Plaintiffs Oracle America, Inc. and Oracle International Corporation (collectively, "Oracle") allege as follows:

<b><u>PARTIES</u></b>

1.      Plaintiff Oracle America, Inc. ("Oracle America") is a corporation organized under the laws of the State of Delaware with its principal place of business at 500 Oracle Parkway, Redwood Shores, California 94065.  Oracle America develops and licenses certain intellectual property, including the Oracle Database, its database management software, and provides related support and consulting services to its licensed customers.

2.      Plaintiff Oracle International Corporation ("Oracle International") is a corporation organized under the laws of the State of California with its principal place of business at 500 Oracle Parkway, Redwood Shores, California 94065.  Oracle International owns and licenses certain intellectual property, including the Oracle Database.  Oracle International, either on its own or jointly with Oracle America (depending on the registration), holds all interest, right, and title to the copyrights in the Oracle Database and the right to bring claims for infringement of those copyrights.

3.      Defendant NEC Corporation of America ("NECAM") is a corporation organized under the laws of the State of Nevada with its headquarters and principal place of business at 3929 W John Carpenter Freeway, Irving, Texas, 75063.  On information and belief, NECAM conducts substantial business operations and has customers around the United States, including within California and the Northern District of California.  On information and belief, NECAM offers a range of software and hardware products for end users across a spectrum of industries.  On information and belief, NECAM is a subsidiary of NEC Corporation, a Japanese multinational information technology company headquartered in Minato, Japan.

<b><u>JURISDICTION AND VENUE</u></b>

4.      The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1367.  This is an action for copyright infringement arising under the Federal Copyright Act, 17 U.S.C. §§ 101 *et seq.* This Court has subject matter jurisdiction over the copyright infringement claim pursuant to 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

5.      The Court also has subject matter jurisdiction under 28 U.S.C. § 1332.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the action is between citizens of different States.

6.      This Court has personal jurisdiction over NECAM because NECAM has consented to the exclusive jurisdiction of, and venue in, the courts in San Francisco or Santa Clara counties in California, in any disputes arising out of or relating to the Oracle PartnerNetwork Agreement ("OPN Agreement") and the related Master Distribution Agreement ("MDA") between NECAM and Oracle America, and this is such a dispute.  *See* 2018 MDA § Q(1) ("This Agreement is governed by the substantive and procedural laws of the State of California and you and Oracle agree to submit to the exclusive jurisdiction of, and venue in, the courts in San Francisco or Santa Clara counties in California, in any dispute arising out of or relating to this agreement."); 2020 OPN Agreement § W(1) ("This agreement is governed by the substantive and procedural laws of the State of California and you and Oracle agree to submit to the exclusive jurisdiction of, and venue in, the courts in San Francisco or Santa Clara counties in California in any dispute arising out of or relating to this agreement.").

7.      The Court also has jurisdiction over NECAM because NECAM has conducted and regularly conducts business within the State of California and within this judicial district.  For example, on information and belief, NECAM is registered with the California Secretary of State to do business in California, has offices located California, has employees who work and reside in California, and has one or more customers located in California.  On information and belief, NECAM – directly or through intermediaries – makes, distributes, offers for sale or license, sells or licenses, or advertises its products and services in the United States, the State of California, and the Northern District of California.

8.      Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim and the actual harm to Oracle occurred in this district, where Oracle America and Oracle International have their principal places of business, by reason of NECAM's conduct.  Venue is further proper in this District under 28 U.S.C. § 1400(a), as NECAM is subject to personal jurisdiction within this district.  Venue is further proper in this District, as NECAM has consented to venue here, as discussed above.

**INTRADISTRICT ASSIGNMENT**

9.      This action is an Intellectual Property Action, as it arises under the copyright laws of the United States and implicates Oracle's intellectual property rights, and should thus be assigned on a district-wide basis under Civil Local Rule 3-2(c).

**BACKGROUND**

**A.  Oracle's Industry-Leading Software**

10.      Oracle is a global leader in database management software and technology, cloud-engineered systems, and enterprise software products.

11.      One of Oracle's flagship products is the Oracle Database, a software product designed to enable reliable and secure storage, retrieval, and manipulation of all forms of data, which has become the world's most popular enterprise database.  The Oracle Database is licensed throughout the world by businesses and organizations of different sizes for a multitude of purposes.

12.      Oracle currently licenses the Oracle Database in different editions, including Standard Edition 1 ("Database SE1"), Standard Edition 2 ("Database SE2"), and a more robust (and expensive) Enterprise Edition ("Database EE").  Oracle also offers specialized programs that supplement or complement the Oracle Database and address particular customer requirements, including Real Application Clusters, Partitioning, Diagnostics, and Tuning Pack (the "Database Options and Packs").

13.      Oracle is the owner or exclusive licensee of the copyrights and copyright applications for the Oracle Database and the Database Options and Packs.  The works are properly registered with the United States Copyright and Trademark Office, as alleged in more detail below.[1]

14.      As part of its business and in certain circumstances, Oracle allows third-party companies – members of the Oracle PartnerNetwork ("OPN") – to duplicate the Oracle Database (and other Oracle software, including the Database Options and Packs) and distribute it, either on its own or with other software applications, to end users.  Oracle offers OPN members multiple ways to distribute Oracle software (and associated licenses) to end users, including, but not limited to the three alternative

---

[1] Because Database SE1 and Database SE2 (collectively "Database SE") share the same code base as Database EE, Oracle's "Oracle Database" copyright registrations cover both Database SE and Database EE.  *See infra* ¶ 39 (table of copyright registrations).

distribution methods listed below, provided the OPN member has an active OPN membership and has entered into a Master Distribution Agreement with a specific distribution addendum with Oracle that covers the method of distribution to be used.  The distribution methods listed below are listed in order of increasing breadth, flexibility, and cost:

(i)     Embedded Software License ("ESL") – Oracle grants the OPN member a right to distribute to end users Oracle software, and a license for it, "embedded" within one or more specified applications developed by the member.  To obtain this right, the OPN member must execute an Embedded Software License Distribution Addendum ("ESL Addendum"), and its distributions are subject to the terms and conditions of the OPN Agreement, Master Distribution Agreement, and the ESL Addendum.  This is the most restrictive distribution method, as the ESL Addendum, among other things, imposes strict limitations on exactly how an OPN member must embed the Oracle programs and how its end users can access the Oracle programs.

(ii)    Application Specific Full Use ("ASFU") – Oracle grants the OPN member a right to distribute to end users Oracle software, and a license for it, solely for use in conjunction with one or more specified applications developed by the OPN member.  To obtain this right, the OPN member must execute an Application Specific Full Use Distribution Addendum ("ASFU Addendum"), and its distributions are subject to the terms and conditions of the OPN Agreement, Master Distribution Agreement, and ASFU Addendum.  This method is broader and more flexible (and more expensive) than the ESL method described above but still limits the end user to using the licensed Oracle software only with the specific application(s) that the member identifies to Oracle.

(iii)   Full Use – Oracle grants the OPN member a general right to distribute to end users Oracle software, and a license for it, without the requirement, among other things, that it be used solely in conjunction with an application developed by the OPN member.  To obtain this right, the OPN member must execute a Full Use Distribution Addendum ("Full Use Addendum"), and its distributions are subject to the terms and conditions of

the OPN Agreement, Master Distribution Agreement, and Full Use Addendum.  This is the broadest, most flexible, and most expensive method.

15.    Per Oracle's standard policy, under each of the three distribution methods listed above, an OPN member is required to pay to Oracle a license fee for all Oracle software that it distributes and a support fee for support services from Oracle, if ordered, for the distributed Oracle software, and an annual technical support fee each year for ongoing support services from Oracle, if ordered, for the distributed Oracle software.

**B.  NECAM's Unauthorized Use of the Oracle Database and the Database Options and Packs**

16.    For more than fifteen years, NECAM was an OPN member with an active OPN Agreement with Oracle.  NECAM first entered into an OPN Agreement with Oracle in or before 2004, and the parties renewed their OPN Agreement from time to time, most recently effective in August 2020.[1]  The parties' OPN Agreement set forth general terms that governed NECAM's OPN membership, and it provided NECAM with a limited license to use Oracle software to develop value-added applications that incorporated Oracle software under the following terms and conditions:

> "Oracle grants you a non-exclusive, limited license to use the technology programs identified in the OPN policies for your partner level to: (a) demonstrate, develop or prototype your value added package for the intended commercial use of multiple end users; (b) provide technical support for employees and end users solely in connection with your value added package that you distribute pursuant to a distribution agreement with Oracle that authorizes you to provide technical support for the Oracle programs; and (c) provide training for the value added package to employees and end users to whom you have distributed the value added package pursuant to a distribution agreement with Oracle.  Development licenses may not be used to develop or administer your value added package for the exclusive use of a specific end user."

*See* 2020 OPN Agreement § C(2) (emphasis added).

17.    In addition to entering into the OPN Agreement, NECAM and Oracle entered into other written agreements that provided – and expressly defined – NECAM's right to distribute Oracle software to end users.  These additional agreements include, but are not limited to, the following:

- Oracle PartnerNetwork Application Specific Full Use Program Distribution Agreement, effective March 7, 2005;

---

[1] NECAM was an OPN member (or "associate" member) through an OPN membership of its corporate parent, NEC Corporation.  NECAM entered into its OPN Agreement with Oracle by written agreement of its corporate parent NEC Corporation.

- Oracle PartnerNetwork Application Specific Full Use Program Distribution Agreement, effective April 18, 2007;

- Oracle PartnerNetwork Application Specific Full Use Program Distribution Agreement, effective August 24, 2009;

- Oracle PartnerNetwork Application Specific Full Use Program Distribution Agreement, effective November 29, 2011;

- Oracle PartnerNetwork ISV Master Distribution Agreement between NEC Corporation of America and Oracle America, Inc., effective December 11, 2013 ("2013 MDA");

- Application Specific Full Use Program Distribution Addendum to the Oracle PartnerNetwork ISV Master Distribution Agreement between NEC Corporation of America and Oracle America, Inc., effective December 11, 2013 (collectively, the "2013 ASFU Addendum");

- Full Use Distribution Addendum to the Oracle PartnerNetwork ISV Master Distribution Agreement between NEC Corporation of America and Oracle America, Inc. [the 2013 MDA], effective September 22, 2016 (collectively, the "2016 Full Use Addendum");

- Embedded Software License Distribution Addendum to the Oracle PartnerNetwork ISV Master Distribution Agreement between NEC Corporation of America and Oracle America, Inc. [the 2013 MDA], effective March 8, 2017 (collectively, the "2017 ESL Addendum");

- Oracle PartnerNetwork Master Distribution Agreement between NEC Corporation of America and Oracle America, Inc., effective December 6, 2018 ("2018 MDA");

- Amendment One to the Oracle PartnerNetwork Master Distribution Agreement between NEC Corporation of America and Oracle America, Inc. [the 2018 MDA], effective December 19, 2018.

- Full Use License Distribution Addendum to the Oracle PartnerNetwork ISV Master Distribution Agreement between NEC Corporation of America and Oracle America, Inc. [the 2018 MDA], effective December 19, 2018 (collectively, the "2018 Full Use Addendum").

- Application Specific Full Use Program Distribution Addendum to the Oracle PartnerNetwork ISV Master Distribution Agreement between NEC Corporation of America and Oracle

America, Inc. [the 2018 MDA], effective December 19, 2018 (collectively, the "2018 ASFU Addendum").

- Embedded Software License Distribution Addendum to the Oracle PartnerNetwork ISV Master Distribution Agreement between NEC Corporation of America and Oracle America, Inc. [the 2018 MDA], effective December 19, 2018 (collectively, the "2018 ESL Addendum").

18.    As a long-time OPN member and Oracle licensee, NECAM was (and is) intimately familiar with the Oracle PartnerNetwork and the different distribution methods Oracle offers to its OPN members – ESL, ASFU, and Full Use.  In the past fifteen years, NECAM has distributed licenses to Oracle software using all three distribution methods – ESL, ASFU, and Full Use – under the agreements set forth above.

19.    As an OPN member, and under the agreements set forth above, NECAM has distributed the Oracle Database and the Database Options and Packs with software solutions that it has developed and marketed, including a value-added application called "Integra-ID 5" – an application NECAM has marketed as a biometrics identification system used by law enforcement agencies.  On information and belief, NECAM has previously marketed this value-added application (or its predecessors) under the name "Integra-ID" and as "Automated Biometrics Identification System."

20.    Between 2004 and 2017, NECAM distributed Integra-ID 5, or its predecessor application, with the Oracle Database and the Database Options and Packs to end users with *ASFU* licenses from Oracle.  NECAM did so under ASFU Addenda to the parties' then-applicable MDA, including an ASFU Addendum to the 2013 MDA and a similar ASFU Addendum to the 2018 MDA.  Under these ASFU Addenda, Oracle provided NECAM with the right to distribute to end users its Integra-ID 5 application with a license to the Oracle Database and the Database Options and Packs, and NECAM agreed to pay license fees (and support fees) to Oracle based on the number of Integra-ID 5 application packages NECAM distributed with an ASFU license.[1]

---

[1] In addition to executing the ASFU Addendum, and as a prerequisite before Oracle would allow NECAM to distribute Oracle software with its Integra-ID 5 application, NECAM submitted for Oracle's approval an ASFU Application Package Registration Form for its Integra-ID 5 application ("ASFU

21.     In 2017 – while retaining its right to distribute Integra-ID 5 with the Oracle Database and the Database Options and Packs through *ASFU* licenses from Oracle – NECAM sought and obtained from Oracle the right to distribute Integra-ID 5 embedded with the Oracle Database and the Database Options and Packs through more restrictive ***ESL licenses***.  As noted, the ESL license distribution method is a less expensive, but more restrictive, option for NECAM to distribute its value-added application embedded with Oracle software.  In an ESL Addendum to the 2013 MDA, Oracle provided NECAM with the right to distribute to end users the Oracle Database and the Database Options and Packs, and *ESL* licenses for it, embedded into Integra-ID 5, and NECAM agreed to pay license fees (and support fees) to Oracle (fees much lower than ASFU license and support fees) based on the number of Integra-ID 5 application packages NECAM distributed under the ESL addendum.[1]  The parties renewed this right in early 2019 through an ESL Addendum to the 2018 MDA.

22.     The ESL Addenda under which NECAM obtained the right to distribute ESL licenses for the Oracle Database and the Database Options and Packs embedded within its Integra-ID5 application expressly (and narrowly) define "embedded" to include certain specified requirements, including the following:

- "The end user [*i.e.*, NECAM's software customers] must not be permitted to install or configure the programs separately and independently from the application package;"

- "The application program must be designed and developed by you to eliminate program administration tasks by the end user by including all program administration functions within the application program. You may not customize the application package for a single end user or a group of end users. All administration scripts including startup, shutdown, and backup are to be provided by you within the application program. The end user must not be permitted to access the programs directly but rather only through the application program;"

- "All information from the programs must be accessed by the end user either through prepackaged reports, or ad hoc reports that are developed by you, and included in the

---

APRF").  The ASFU APRF contained a high-level summary of certain functionality of the Integra ID-5 application and its use of the Oracle Database and the Database Options.

[1] In addition to executing the ESL distribution addendum, and as a prerequisite before Oracle would allow NECAM to distribute its Integra-ID 5 application with Oracle software, NECAM submitted for Oracle's approval an ESL Application Package Registration Form for its Integra ID-5 application ("APRF").  The ESL APRF contained a high-level summary of certain functionality of the Integra ID-5 application and its use of the Oracle Database and the Database Options and Packs.  *See* 2017 ESL APRF; *see also* 2019 ESL APRF, submitted and approved when the parties renewed the ESL license in early 2019.

application package which do not require or permit the end user to navigate the underlying data schema. If you include Oracle or third party reporting tools in the application package, such tools must be embedded in the application package pursuant to the terms of this agreement;"

- "If the application package must interface with another application or database, the end user is not permitted to directly access the database or use Oracle-supplied APIs to establish the transfer of data. To transfer data, you must set up predefined APIs unique to the application package and management of the data transfer must be done through the application program;"

- "Only you can access the programs directly for purposes of technical assistance to your end user and such access is limited to providing technical assistance, including troubleshooting, problem resolution, and support assistance. You shall not provide remote or onsite program administration tasks on behalf of the end user that are otherwise prohibited under the terms of this agreement."

See 2017 ESL Addendum and 2018 ESL Addendum.

23.    In the OPN Agreement and the MDA, NECAM expressly agreed Oracle may audit NECAM's use and distribution of Oracle's software.  NECAM further agreed to "pay within 30 days of written notification any fees applicable to [NECAM's] distribution of the programs, hardware, learning credits and/or services in excess of [NECAM's] rights and any underpaid fees."  The OPN Agreement states:

"Upon 45 days written notice, Oracle may audit your use of the Oracle property. Any such audit shall not unreasonably interfere with your normal business operations. You agree to cooperate with Oracle's audit and provide reasonable assistance and access to information including but not limited to relevant books, records, agreements, servers, technical personnel, and order reporting systems. You agree to pay within 30 days of written notification any fees applicable to your use of the Oracle property in excess of your license rights. If you do not pay, Oracle can end your technical support, licenses, your OPN membership and this agreement, and/or may choose not to accept your application to renew this agreement at such time of renewal. You agree that Oracle shall not be responsible for any of your costs incurred in cooperating with the audit."

See 2020 OPN Agreement § W(5) (emphasis added).  The MDA states:

"You agree that you will keep accurate books and records in connection with the activities under this agreement and any applicable distribution addenda. Upon 45 days written notice, Oracle may audit your distribution of the programs, hardware, learning credits and services and any other activities under this agreement and any applicable distribution addenda. Any such audit shall not unreasonably interfere with your normal business operations. You agree to cooperate with Oracle's audit and provide reasonable assistance and access to information including but not limited to relevant books, records, agreements, servers, technical personnel, and order reporting systems.  Upon Oracle's request, you will also provide to Oracle a system generated list of the Oracle program licenses, hardware, learning credits and/or services distributed to end

10

users under this agreement during the time period specified by Oracle and any supporting documentation requested by Oracle pursuant to the terms of Section D (Order Terms) for the purposes of validating the completeness and accuracy of your obligations under this agreement and any applicable distribution addenda. <u>You agree to pay within 30 days of written notification any fees applicable to your distribution of the programs, hardware, learning credits and/or services in excess of your rights and any underpaid fees.</u> If you do not pay, Oracle can end your technical support, licenses, services, the validity of any learning credits, and this agreement and/or may choose not to accept your application to renew this agreement at such time of renewal. Upon Oracle's request, you agree to audit end user(s) and report the findings to Oracle, o assign your right to audit end user(s) to Oracle. You agree that Oracle shall not be responsible for any of your costs incurred in cooperating with this audit."

*See* 2018 MDA § Q(5) (emphasis added).

24.     In December 2019, Oracle exercised its contractual right to audit NECAM's use and distribution of Oracle software, including, but not limited to, its distributions of Oracle software with or embedded within its own applications, such as Integra-ID 5, and Oracle found numerous compliance issues related to these distributions. Based on information that NECAM itself provided as part of the audit, among other issues, Oracle found the following:

(i)     NECAM had distributed the Oracle Database and the Database Options and Packs with its Integra-ID 5 application to certain end users in excess of its distribution rights under the ESL Addenda; NECAM had improperly reported those distributions to Oracle as having been made pursuant to NECAM's *ESL* Addenda; and NECAM had improperly paid Oracle license fees on those distributions at the *ESL* rate – rather than at the higher *ASFU* license fee rate. NECAM had distributed the Oracle Database *with* Integra-ID 5 but not "embedded" with it, as required to be covered by NECAM's ESL Addenda. In particular, Oracle found that NECAM customized its Integra-ID5 application for specific end users, certain end users were permitted to create custom reports within the application and had customer APIs to establish transfer of data, and NECAM performed program administrations tasks, on the end user's behalf, in excess of the rights granted pursuant to the ESL Addenda. These distributions are not permitted by NECAM's ESL Addendum; instead, they are permitted by NECAM's ASFU Addenda, and NECAM is obligated under the applicable ASFU Addendum to pay Oracle ASFU license fees (and support fees) for them, which NECAM has not done.

(ii)      NECAM had distributed the Oracle Database (and other Oracle software) in excess of its distribution rights under its ASFU Addenda as well, by distributing it to an end user (the Ohio State Police) for use with a custom application (called "Openfox CCH") for that user that was being developed by an entity other than NECAM; NECAM had improperly reported those distributions to Oracle as having been made pursuant to NECAM's *ASFU* Addendum; and NECAM had improperly paid Oracle license fees on those distributions at the *ASFU* rate – rather than at the higher *Full Use* license fee rate.  These distributions are not permitted by the ASFU Addendum, since the ASFU Addendum does not authorize distributions of Oracle software for use with applications developed by an entity other than NECAM.  These distributions instead are permitted by NECAM's Full Use Addendum, and NECAM is obligated under the applicable Full Use Addendum to pay Oracle Full Use license fees (and support fees) for them, which NECAM has not done.

(iii)     NECAM had previously failed to report certain distributions of the Oracle Database with its Integra-ID 5 application to end users as required by the applicable ASFU Addendum, or NECAM had not reported the correct quantity of licenses for those users.

(iv)     NECAM had on-premise development environments using the Oracle Database and the Database Options and Packs in excess of the rights granted to NECAM under its OPN Agreement and other agreements with Oracle.  On information and belief, NECAM's on-premise development environment contained separate environments using the Oracle Database and the Database Options and Packs for each of its end users, which would allow it to develop and administer updates and fixes, among other things, for each specific end user.  This use of the Oracle Database and the Database Options and Packs is not licensed under any existing agreement.

Given the magnitude of the issues that Oracle has identified above and as several of the issues relate to unreported royalties and NECAM's failure to provide information related to its on-premise development environments, Oracle does not know whether this is the full scope of NECAM's improper conduct pertaining to the OPN Agreement and MDA, or to the parties' other agreements and addenda.

1

**C.**   **Oracle's Attempts to Settle the Licensing Dispute with NECAM**

2

3

4

5

6

7

8

9

     25.    In October 2020, Oracle sent an Audit Report to NECAM, summarizing Oracle's audit findings, subject to the accuracy and completeness of the information provided by NECAM, and asking NECAM to resolve the compliance findings within 30 days as required by the parties' agreements.  In the Audit Report, Oracle advised that NECAM needed to procure (pay for) additional ASFU and Full Use licenses for its prior distributions, and Oracle further advised that NECAM had previously failed to report (or had under-reported) certain distributions, as discussed above.  In addition, Oracle asked NECAM to provide Oracle with additional information regarding its on-premise development environments to enable Oracle to determine the extent to which they exceeded NECAM's rights.

10

11

     26.    NECAM did not resolve Oracle's audit compliance findings within 30 days – nor did it do so in the many months that have followed.

12

13

14

15

16

17

     27.    Oracle has repeatedly asked NECAM to resolve the audit compliance findings, but NECAM has not done so.  To date, NECAM has not paid the full license and support fees NECAM owes for its distributions of Oracle software described in paragraphs 24(i) and (ii) above.  NECAM has not paid Oracle for the distributions it previously failed to report or under-reported.  And NECAM has not provided Oracle with the additional information Oracle requested regarding NECAM's on-premise development environments, which is part of Oracle's audit process.

18

19

20

21

     28.    On January 19, 2021, Oracle sent a letter to NECAM, notifying NECAM that due to NEC's continued failure to resolve the audit findings, Oracle considers NECAM to be in material breach of its agreements with Oracle.  But after receiving Oracle's letter, NECAM still did not resolve the audit findings.

22

23

24

     29.    On March 5, 2021, Oracle sent another letter to NECAM, notifying NECAM that Oracle was, by its letter, terminating NECAM's membership in the Oracle PartnerNetwork, the 2018 MDA, and all related ASFU distribution addenda and ESL distribution addenda.

25

26

27

     30.    Because NECAM has refused to provide Oracle with information related to its use of the Oracle Database in NECAM's on-premise software development environment, Oracle does not yet know the full details of NECAM's use of the Oracle Database in that environment.

28

13

## FIRST CAUSE OF ACTION

### Breach of Contract

31.    Oracle incorporates by reference each of the preceding paragraphs 1 through 30 as if fully set forth herein.

32.    Oracle and NECAM entered into contracts with Oracle, including the OPN Agreement, the 2013 MDA, the 2018 MDA, and the related Full Use, ASFU, and ESL Addenda.

33.    Oracle did all, or substantially all, of the significant things that the contracts required it to do.

34.    NECAM breached its contracts with Oracle by its acts and omissions, including failing to pay license and support fees owed to Oracle under the contracts and failing to provide information to Oracle as required by the contracts' audit provisions.  For example, NECAM breached the 2013 MDA, the 2013 ASFU Addendum, the 2018 MDA, and the ASFU Addenda by failing to report and pay license fees (and support fees) owed under the ASFU Addenda for distributions of its Integra-ID 5 application with the Oracle Database and the Database Options and Packs that were not permitted by NECAM's ESL Addenda.  As another example, NECAM breached the 2013 MDA and the 2016 Full Use Addendum by failing to report and pay license fees (and support fees) owed under the Full Use Distribution Addendum for distributions of the Oracle Database (and other Oracle software) to the Ohio State Police that were not permitted by NECAM's ASFU addendum.  And, as another example, NECAM breached its duty under the OPN Agreement and the 2018 MDA to cooperate with Oracle's audit and provide reasonable assistance and access to information, by failing to provide Oracle with additional information regarding its on-premise development environments to enable Oracle to determine the extent to which they exceeded NECAM's rights, as Oracle repeatedly requested.

35.    As a result of NECAM's breaches of contract, Oracle has been damaged in an amount exceeding $7,000,000.

36.    NECAM's breaches of contract were a substantial factor in causing Oracle's harm.

//

//

//

14

**SECOND CAUSE OF ACTION**

**Copyright Infringement Under 17 U.S.C. §§ 101 *et seq.* and 17 U.S.C. §§ 501 *et seq.***

37.    Oracle incorporates by reference each of the preceding paragraphs 1 through 36 as if fully set forth herein.

38.    Oracle owns valid and enforceable copyrights in all its software products, including the Oracle Database and the Database Options and Packs, which are creative works of original authorship and copyrightable subject matter.  Oracle has owned these copyrights throughout the time of NECAM's infringement.

39.    In compliance with the Copyright Regulations, Oracle has registered or filed with the Copyright Office copyright applications, registration fees, and deposits of the Oracle Database and the Database Options and Packs.  Oracle is the owner or exclusive licensee of all right, title, and interest to the registrations and copyright applications for the Oracle Database and the Database Options and Packs, as described below:

| Title of Work | Registration Number | Date Issued |
|---|---|---|
| Oracle9I Database Enterprise Edition Release 1 | TX 5-673-281 | June 13, 2003 |
| Oracle9I Database Enterprise Edition Release 2 | TX 5-673-282 | June 13, 2003 |
| Oracle Database 10g Release 1 | TX 6-938-648 | January 16, 2009 |
| Oracle Database 10g Release 2 | TX 6-942-003 | June 29, 2009 |
| Oracle Database 11g Release 1 | TX 7-324-157 | March 24, 2011 |
| Oracle Database 11g Release 2 | TX 7-324-158 | March 24, 2011 |
| Oracle Database 12c Release 1 (12.1) | TX 8-188-258 | May 9, 2016 |
| Oracle Database 18c (18.3) | TX 8-843-054 | February 26, 2020 |
| Oracle Database 19c (19.3) | TX 8-843-065 | February 26, 2020 |
| Oracle Tuning Pack 10g, Release 2 (10.2) | TX 7-912-167 | September 25, 2014 |
| Oracle Tuning Pack 10g, Release 1 (10.1) | TX 7-912-168 | September 25, 2014 |
| Oracle Tuning Pack 11g, Release 1 (11.1) | TX 7-913-004 | September 25, 2014 |
| Oracle Tuning Pack 11g, Release 2 (11.2) | TX 7-913-797 | September 25, 2014 |
| Oracle Tuning Pack 12c, Release 1 (12.1) | TX 8-429-411 | November 6, 2017 |
| Oracle Tuning Pack 19c | TX 8-840-649 | February 21, 2020 |

COMPLAINT

| Title of Work | Registration Number | Date Issued |
|---|---|---|
| Oracle Diagnostics Pack 10g, Release 1 (10.1) | TX 7-912-165 | September 25, 2014 |
| Oracle Diagnostics Pack 10g, Release 2 (10.2) | TX 7-912-163 | September 25, 2014 |
| Oracle Diagnostics Pack 11g, Release 1 (11.1) | TX 7-912-164 | September 25, 2014 |
| Oracle Diagnostics Pack 11g, Release 2 (11.2) | TX 7-912-166 | September 25, 2014 |
| Oracle Diagnostics Pack 12c, Release 1 (12.1) | TX 8-429-412 | November 6, 2017 |
| Oracle Diagnostics Pack 19c | TX 8-844-190 | February 21, 2020 |
| Oracle Partitioning Option for Oracle9i Database, Release 1 (Oracle Partitioning 9.0.1.5.0) | TX 6-493-483 | January 29, 2007 |
| Oracle Partitioning Option for Oracle9i Database, Release 2 (Oracle Partitioning 9.2.0.6.0) | TX 6-498-917 | January 29, 2006 |
| Oracle Partitioning Option to Oracle Database 10g, Release 1 (10.1) | TX 8-377-113 | March 7, 2017 |
| Oracle Partitioning Option to Oracle Database 10g, Release 2 (10.2) | TX 8-377-114 | March 7, 2017 |
| Oracle Partitioning Option to Oracle Database 11g, Release 1 (11.1) | TX 8-377-112 | March 7, 2017 |
| Oracle Partitioning Option to Oracle Database 11g, Release 2 (11.2) | TX 8-377-111 | March 7, 2017 |
| Oracle Partitioning Option to Oracle Database 12c, Release 1 (12.1) | TX 8-377-106 | March 7, 2017 |
| Oracle Real Application Clusters (RAC) Option to Oracle Database 9i Release 1 (9.0) | TX 8-188-288 | May 9, 2016 |
| Oracle Real Application Clusters (RAC) Option to Oracle Database 9i Release 2 (9.2) | TX 8-188-285 | May 9, 2016 |
| Oracle Real Application Clusters (RAC) Option to Oracle Database 10g Release 1 (10.1) | TX 8-188-280 | May 9, 2016 |
| Oracle Real Application Clusters (RAC) Option to Oracle Database 10g Release 2 (10.2) | TX 8-188-293 | May 9, 2016 |
| Oracle Real Application Clusters (RAC) Option to Oracle Database 11g Release 1 (11.1) | TX 8-188-277 | May 9, 2016 |
| Oracle Real Application Clusters (RAC) Option to Oracle Database 11g Release 2 (11.2) | TX 8-188-283 | May 9, 2016 |
| Oracle Real Application Clusters (RAC) Option to Oracle Database 12c Release 1 (12.1) | TX 8-188-275 | May 9, 2016 |
| Oracle Real Application Clusters 19c (19.3) | TX 8-843-144 | February 26, 2020 |

40.     As the owner or exclusive licensee of the copyrights in the Oracle Database and the Database Options and Packs, Oracle enjoys the exclusive right to, among other things, reproduce, make derivative works of, display, and distribute the Oracle Database and the Database Options and Packs.  17 U.S.C. §§ 101, 106.

41.     NECAM is not authorized to reproduce, distribute, make derivative works from, and/or display the Oracle Database or the Database Options and Packs, except as authorized by the OPN Agreement and its existing distribution agreements described above.

42.     Through the acts described above, NECAM has violated Oracle's exclusive rights to reproduce, distribute, make derivative works from, and/or display the Oracle Database software and the Database Options and Packs software.  On information and belief, NECAM has reproduced, distributed, made derivative works from, and/or displayed the Oracle Database and the Database Options and Packs software in its on-premise environments outside the scope any existing license.

43.     As a long-time member of the Oracle Partner Network and Oracle software licensee, NECAM has been, or should have been, aware of the existence of Oracle's copyrights in the Oracle Database and the Database Options and Packs.  On information and belief, NECAM also knew it did not have the appropriate license or authorization to distribute and use the Oracle Database or the Database Options beyond the uses for which it had a license.  When Oracle brought the unauthorized use to NECAM's attention, NECAM declined to procure the necessary licenses and continued to infringe Oracle's rights in its copyrighted software.  NECAM is therefore a willful infringer of Oracle's copyrights and exclusive rights and subject to treble damages.

44.     Oracle has been damaged as a result of NECAM's copyright infringement, based on at least NECAM's failure to pay license, maintenance, and support fees related to its use of the Oracle Database and the Database Options and Packs beyond that for which NECAM has a license.  Further, on information and belief, NECAM has generated profits through its unauthorized use of the Oracle Database.  Oracle is entitled to recover from NECAM the profits NECAM generated through its infringement of Oracle's copyrights in the Oracle Database and the Database Options.  Finally, Oracle may elect to recover statutory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Oracle respectfully prays for judgment in its favor against NECAM as follows:

a.  Entry of judgment holding NECAM liable for infringement of the copyrights at issue in this litigation;

b.  An order awarding Oracle all damages resulting from NECAM's breaches of contract and from NECAM's infringement of the copyrights at issue in this litigation, including Oracle's actual damages, NECAM's profits, treble damages from willful infringement, and/or statutory damages pursuant to 17 U.S.C. § 504, together with prejudgment and post-judgment interest;

c.  An accounting of all gains, profits, and advantages derived by NECAM from its copyright infringement, pursuant to 17 U.S.C. § 504;

d.  Trebling of damages under 35 U.S.C. § 284 in view of the willful and deliberate nature of NECAM's infringement of copyrights at issue in this litigation;

e.  An order awarding Oracle its costs and attorneys' fees pursuant to 35 U.S.C. § 285 and 17 U.S.C. § 505; and

f.  Any and all other legal and equitable relief as the Court may deem proper.

Dated: July 8, 2021

Respectfully submitted,

THE NORTON LAW FIRM PC

By:  */s/ Fred Norton*

Fred Norton
Attorneys for Plaintiffs
ORACLE AMERICA, INC. and
ORACLE INTERNATIONAL CORPORATION

COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2          Pursuant to Civil Local Rule 3-6 and Federal Rule of Civil Procedure 38, Plaintiffs Oracle

3   America, Inc. and Oracle International Corporation hereby demand a trial by a jury on all issues triable

4   by a jury.

5

6   Dated: July 8, 2021                                    Respectfully submitted,

7                                                          THE NORTON LAW FIRM PC

8                                        By:   */s/Fred Norton*
                                               Fred Norton
9                                              Attorneys for Plaintiffs
                                               ORACLE AMERICA, INC. and
10                                             ORACLE INTERNATIONAL CORPORATION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28