IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NEC CORPORATION OF AMERICA,<br><br>Defendant. | Case No. 21-cv-05270-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS AND TO STRIKE AFFIRMATIVE DEFENSES** |

Plaintiffs Oracle America, Inc., and Oracle International Corporation ("Oracle") filed suit against Defendant NEC Corporation of America ("NECAM") for copyright infringement and breach of contract. In its answer, NECAM stated eight affirmative defenses and six counterclaims. Oracle moved to dismiss NECAM's first, second, and third counterclaims, and to strike NECAM's corresponding third and fourth affirmative defenses. The Court GRANTS Oracle's motion.

## I. BACKGROUND

Oracle America and Oracle International are corporations incorporated in Delaware and California, respectively; both have their principal place of business in Redwood Shores, California. Compl. (dkt. 1) ¶¶ 1-2. NECAM is a Nevada corporation with its principal place of business in Texas. Ans. (dkt. 23) at 45 (Counterclaims ¶ 1).

Oracle owns Oracle Database, a "software product designed to enable reliable and secure storage, retrieval, and manipulation of all forms of data." Compl. ¶ 11. Oracle Database is licensed in different editions. Id. ¶ 12. Oracle allows third-party companies that are members of the Oracle PartnerNetwork ("OPN") to duplicate the Oracle Database and distribute it to end users via three different types of licenses. Id. ¶ 14. The Embedded

Software License ("ESL") is "the most restrictive distribution method, as the ESL Addendum, among other things, imposes strict limitations on exactly how an OPN member must embed the Oracle programs and how its end users can access the Oracle programs." Id. ¶ 14(i). The Application Specific Full Use ("ASFU") license is "broader and more flexible (and more expensive) . . . but still limits the end user to using the licensed Oracle software only with the specific application(s) that the member identifies to Oracle." Id. ¶ 14(ii). The Full Use license grants a general right to distribute the Database to end users and is still more flexible and expensive. Id. ¶ 14(iii).

Since 2004, NECAM has been a member of the OPN, and at various times, it has purchased each of the three different license agreements to distribute its products. Id. ¶¶ 17–18; Ans. at 8–9. NECAM used the Oracle database in conjunction with "Integra-ID 5," a biometrics identification system that it developed and that is used by law enforcement agencies. See Ans. at 10–11.

In 2016, NECAM and Oracle began negotiating a new license for Integra-ID 5. NECAM signed an ESL application package registration form ("APRF") describing its application and its planned distribution and use of the Oracle database. Ans. at 51 (Counterclaims ¶ 21). In response to question G10—which concerns whether NECAM's intended uses fit the embedded license—NECAM answered yes and explained that its software "provide[s] customized reports." Id. On December 7, 2016, Allison Bell, an ISV Account Manager for Oracle, informed Oliver Fish, a Senior Vendor Relations Specialist at NECAM, that the "first draft [of the ESL APRF] was rejected" because of NECAM's response to question G10. Id. ¶ 22. NECAM alleges:

> Oracle then instructed NECAM to reinterpret the questions on the Embedded license registration form as asking whether NECAM customized software installations. Because NECAM does not customize software installations, its answer to question G10 changed to a "no." . . . After NECAM updated its responses to the registration form based on Oracle's guidance, Oracle granted NECAM an Embedded license to use Oracle's software. On information and belief, Oracle instructed NECAM to reinterpret the question because NECAM's prior answer disclosed a use that was incompatible with the Embedded license.

2

Ans. at 47 (Counterclaims ¶ 19).

Specifically, NECAM alleges that it sent an email to Bell on December 19 that no longer mentioned customized reports and instead, with reference to question G10, stated: "Oracle is included and installed as part [of] our application. We launch a standard set of scripts as part of application installation, but it is also configured through our application interface." Id. ¶ 23. Because this revised response to question G10 was compatible with the ESL, Bell responded by email that she would "try to resubmit [the license application] with the below information" and that she was seeking "final approvals" within Oracle for a draft of the registration form. Id. ¶ 24. On January 20, 2017, Bell emailed NECAM an updated price quote for the ESL. Id. ¶ 26. In March 2017, the parties finalized and signed the ESL agreement. Id. ¶¶ 27–29. The ESL addenda stated: "You may not customize the application package for a single end user or a group of end users." Compl. ¶ 22.

The agreement permitted Oracle to audit NECAM's use of the Oracle Database. Id. ¶ 23. In December 2019, Oracle conducted an audit and concluded that NECAM's use violated various provisions of the license. Id. ¶ 24. On January 19, 2021, Oracle sent NECAM a letter stating that it was in material breach of its agreement, and it later terminated NECAM's membership in the OPN and the relevant licenses. Id. ¶¶ 28–29.

On July 8, 2021, Oracle filed this lawsuit against NECAM, alleging copyright infringement and breach of contract. See Compl. On September 1, NECAM filed an answer, also stating eight affirmative defenses and six counterclaims. See Ans. at 25-44 (affirmative defenses); id. at 45-62 (counterclaims). Among the counterclaims were: intentional misrepresentation and/or false promise, copyright misuse, and a violation of California's Unfair Competition Law ("UCL"). See id. at 46–57; Cal. Bus. & Prof. Code § 17200. Among the affirmative defenses were fraud in the inducement/fraud in the execution and copyright misuse. See id. at 32–42. Oracle moved to dismiss these three counterclaims and to strike these two affirmative defenses. Mot. to Dismiss (dkt. 28); see also Opp. (dkt. 29); Rep. (dkt. 30).

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) applies when a complaint lacks either "a cognizable legal theory" or "sufficient facts alleged" under such a theory. Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).

A party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Particularity requires "the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false." Benavidez v. Cty. of San Diego, 993 F.3d 1134, 1145 (9th Cir. 2021) (quoting United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1180 (9th Cir. 2016)). Allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." United Healthcare, 848 F.3d at 1180 (citation and quotation omitted).

Under Rule 12(f), a court may "strike from a pleading an insufficient defense." Fed. R. Civ. P. 12(f). The rule is designed to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to

4

trial." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (quotation and citation omitted). A court may strike an affirmative defense under Rule 8(c) as "insufficient" either as a matter of law or as a matter of pleading. Dodson v. Strategic Restaurants Acquisition Co. II, LLC, 289 F.R.D. 595, 603 (E.D. Cal. 2013). An affirmative defense is insufficient if the defense is not "plausible on its face" under Iqbal. Barnes v. AT&T Pension Ben. Plan-Nonbargained Program, 718 F. Supp. 2d 1167, 1173 (N.D. Cal. 2010); see also Ramirez v. Ghilotti Bros. Inc., 941 F. Supp. 2d 1197, 1204 (N.D. Cal. 2013). Courts may strike insufficient defenses without a showing of prejudice. Barnes, 718 F. Supp. 2d at 1171–72. However, leave to amend should be freely given so long as there is no prejudice to the moving party. Wyshak v. City Nat. Bank, 607 F.2d 824, 826 (9th Cir. 1979).

## III. DISCUSSION

### A. Fraud

To state a claim for fraud, a claimant must allege: (1) a misrepresentation; (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. Engalla v. Permanente Med. Grp., Inc., 15 Cal. 4th 951, 973–74 (1997). Although California law allows misrepresentations to be implied, Rule 9(b) requires parties in federal court to plead with particularity. In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig., 349 F. Supp. 3d 881, 917 (N.D. Cal. 2018) (citing Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009)). NECAM fails to state a claim because it pleads neither the misrepresentation nor justifiable reliance with particularity.

NECAM alleges that Oracle "instructed NECAM to reinterpret the questions on the Embedded license registration form as asking whether NECAM customized software installations." Ans. at 47 (Counterclaims ¶ 12); see also id. ¶ 44 (alleging that Oracle "misrepresented the nature of the inquiry in question G10 of the registration form and the contours of the restrictions set forth in the Embedded license"). Yet NECAM includes no details about the "the who, what, when, where, and how of the misconduct charged."

5

Benavidez, 993 F.3d at 1145.

Of Oracle's alleged statements and actions, none were false or fraudulent. See Ans. at 51-53. On December 7, 2016, Bell informed NECAM that the "first draft [of the ESL APRF] was rejected" because of NECAM's response to question G10. Counterclaims ¶ 22. On December 19, NECAM emailed Bell an updated response to question G10 suggesting that NECAM's use was compatible with the ESL. Id. ¶ 23. Bell responded that she would "try to resubmit [the license application] with the below information" and that she was seeking "final approvals" within Oracle. Id. ¶ 24. None of these facts point to fraud, much less with particularity. NECAM plausibly alleges that (1) NECAM misunderstood question G10 and provided Oracle with incorrect information; (2) Oracle resubmitted the ESL application; and (3) NECAM signed the contract.

NECAM alleges fraud only by insinuation. In its brief, NECAM explains that it "has little doubt" based on "circumstantial evidence" that someone at Oracle contacted NECAM over the phone between December 7 and December 19 to "direct[]" it to misinterpret question G10 of the license. Opp. at 12-13, 11. Though NECAM may have "little doubt," federal courts require more. See Benavidez, 993 F.3d at 1145.[1]

For similar reasons, NECAM also does not plausibly allege facts indicating that its reliance was justifiable. Without clearly alleging a misrepresentation, a party cannot allege that reliance on that misrepresentation was reasonable. That is especially true because NECAM had used Oracle's license agreements in the past—and had previously distributed Integra-ID 5 under the more flexible ASFU license. Compl. ¶¶ 17–18; Ans. at 9–12. At least without alleging far more facts, it is questionable why NECAM would reasonably believe that Integra-ID 5 could be distributed on Oracle's most restrictive license. Cf. Microsoft Corp. v. Hon Hai Precision Indus. Co., No. 19-CV-01279-LHK, 2020 WL 5128629, at *11 (N.D. Cal. Aug. 31, 2020) (company did not plausibly justifiably rely on a representation that royalty rates were nonnegotiable because it later negotiated lower

---

[1] In its brief, NECAM includes a few additional details, but they are still vague and implausible. Those details (and more) belong in its pleading.

6

prices). Further, NECAM later signed the contract, and it seems to be a somewhat sophisticated party. See Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc., 89 Cal. App. 4th 1042, 1049 (Ct. App. 2001), as modified ("A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing.").[2]

For these reasons, NECAM fails to state a counterclaim for intentional misrepresentation/false promise. See Fed. R. Civ. P. 9(b). The Court also strikes as insufficient NECAM's affirmative defense for fraud in the inducement/fraud in the execution. See Barnes, 718 F. Supp. 2d at 1173.

**B.     UCL Claim**

NECAM also fails to plead with particularity a counterclaim under the UCL. See California Business & Professions Code § 17200; Ans. at 56–57 (Counterclaims ¶¶ 44–45, 47). Because Rule 9(b) applies to UCL claims sounding in fraud, this counterclaim fails. See Kearns, 567 F.3d at 1125; Benavidez, 993 F.3d at 1145.[3]

**C.     Copyright Misuse**

Finally, NECAM fails to plead a counterclaim or state an affirmative defense for copyright misuse. Copyright misuse occurs when a copyright holder "[c]ondition[s] the license on [the licensee's] promise not to use [the copyright holder's] competitors' products" or otherwise curtails the development of competing products. Practice Mgmt. Info. Corp. v. Am. Med. Ass'n, 121 F.3d 516, 521 (9th Cir. 1997); see Triad Sys. Corp. v. Se. Exp. Co., 64 F.3d 1330, 1337 (9th Cir. 1995) (similar). But this doctrine is applied "sparingly." Apple Inc. v. Psystar Corp., 658 F.3d 1150, 1157 (9th Cir. 2011). "A software licensing agreement may reasonably restrict use of the software as long as it does not prevent the development of competing products." Id. at 1159.

NECAM nowhere alleges that Oracle prevented NECAM from developing software

---

[2] The Court notes that there is a factual dispute as to the ambiguity of the contract language. If NECAM alleges the misrepresentation with sufficient particularity, it is possible that those facts will also plausibly allege justifiable reliance. See Opp. at 13–14.
[3] NECAM suggests in its brief that its UCL claim is not based on fraud but rather on breach of the implied covenant of good faith and fair dealing or tortious interference with contract. Opp. at 9. But it alleges neither of these legal theories in its counterclaim. See Ans. 56–57.

7

to compete with Oracle's software or from using software by one of Oracle's competitors. It alleges only that Oracle's license prevented NECAM from modifying its own software, from using its software to "generate customized reports," and from "providing support services" to NECAM customers. Ans. at 54-55 (Counterclaims ¶¶ 37, 39, 40). NECAM has failed to plead a claim for copyright misuse, and its corresponding affirmative defense is insufficient. Godecke, 937 F.3d at 1208; Barnes, 718 F. Supp. 2d at 1173.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Oracle's motion to dismiss NECAM's first, second, and third counterclaims, and to strike NECAM's corresponding third and fourth affirmative defenses. The Court grants NECAM leave to amend its affirmative defenses and counterclaims. See Wyshak, 607 F.2d at 826. It may file an amended answer within 30 days of the date of this order.

**IT IS SO ORDERED.**

Dated: October 29, 2021



CHARLES R. BREYER
United States District Judge